## IN THE UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| ANDRE LEE, | CASE NO. 1:22-CV-01945-BYP |
| Petitioner, | JUDGE BENITA Y. PEARSON |
| vs. | MAGISTRATE JUDGE DARRELL A. CLAY |
| WARDEN GEORGE FREDRICK,[1] | **REPORT AND RECOMMENDATION** |
| Respondent. | |

### INTRODUCTION

Represented by counsel, Petitioner Andre Lee, a prisoner in state custody, petitioned on October 28, 2022 for a writ of habeas corpus under 28 U.S.C. § 2254. (ECF #1). The District Court has jurisdiction over the petition under § 2254(a). On February 3, 2023, under Local Civil Rule 72.2, this matter was referred to me to prepare a Report and Recommendation. (Non-document entry of Feb. 3, 2023). On April 3, 2023, Respondent Warden George Frederick, as Warden of the Marion Correctional Institution, filed the Return of Writ, including the state-court record and trial transcripts. (*See* ECF #5 and #5-1). On July 3, 2023, Mr. Lee filed a Traverse to the Return of Writ. (ECF #7).

---

[1] In the Return of the Writ, the State identified Lyneal Wainwright as the Warden of the Marion Correctional Institution. (ECF #5 at PageID 39 n.1). I take judicial notice that the Ohio Department of Rehabilitation and Corrections official government website lists George Frederick as the warden of that facility. *See Marion Correctional Institution (MCI)*, *Ohio Dept. of Rehab. & Corr.*, http://drc.ohio.gov/about/facilities/marion-correctional/ (last accessed Nov. 25, 2024). Thus, under Fed. R. Civ. P. 25(d) and Rule 2(a) of the Habeas Rules, I substitute Warden Frederick as the proper respondent.

For the reasons below, I recommend the District Court **DISMISS** Grounds One through Five as procedurally defaulted, **DENY** Ground Six as meritless, and **DISMISS** Mr. Lee's habeas petition. I further recommend the District Court **DENY** a certificate of appealability as to all grounds.

PROCEDURAL HISTORY

I.     **State court factual findings**

The factual findings of the Ohio Court of Appeals, Eighth District, made on direct appeal are presumed correct unless Mr. Lee rebuts that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). In its opinion affirming Mr. Lee's conviction, the Eighth District found:

> {¶2} After a jury trial, Lee was found guilty of one count of murder, an unclassified felony, in violation of R.C. 2903.02(B) with a one- and three-year firearm specification; one count of felonious assault, a second-degree felony, in violation of R.C. 2903.11(A)(1) with one- and three-year firearm specifications; one count of carrying concealed weapons, a fourth-degree felony, in violation of R.C. 2923.12(A)(2); two counts of drug possession, fifth-degree felonies, in violation of R.C. 2925.11(A); and one count of possessing criminal tools, a fifth-degree felony, in violation of R.C. 2923.24(A). The trial court returned guilty verdicts on the previously bifurcated 54-month firearm specification and Counts, having weapons while under disability, a third-degree felony, in violation of R.C. 2923.13(A)(2). Lee was found not guilty of murder, an unclassified felony, in violation of R.C. 2903.02(A); and voluntary manslaughter, a felony of the first-degree, in violation of R.C. 2903.03(A). The trial court sentenced Lee to a term of 24 years-to-life imprisonment.

> {¶3} Lee elected to have a jury trial on all counts with the exception of the having weapons while under disability count, together with the 54-month firearm specification, where he elected to have the trial court decide.

> * * *

> {¶10} The case proceeded to trial. Lee was found guilty of the previously stated offenses, and the trial court sentenced him to a term of 24 years-to-life imprisonment.

(ECF #5-1 at PageID 221-25; *State v. Lee*, No. 109215, 2020 WL 7396520, at *1-2 (Ohio Ct. App. Dec. 17, 2020), *appeal not allowed*, 166 N.E.3d 15 (Ohio 2021) (table)).

## II.     Trial court proceedings

On September 19, 2019, a Cuyahoga County grand jury indicted Mr. Lee for:

- Two counts of murder in violation of Ohio Rev. Code §§ 2903.02(A) & (B),

- One count of felonious assault in violation of R.C. § 2903.11(A)(1),

- One count of voluntary manslaughter in violation of R.C. § 2903.03(A),

- One count of having weapons under disability in violation of R.C. § 2923.13(A)(2),

- One count of carrying a concealed weapon in violation of R.C. § 2923.12(A)(2),

- Two counts of drug possession in violation of R.C. § 2925.11(A), and

- One count of possessing criminal tools in violation of R.C. § 2923.24(A).

(ECF #5-1 at PageID 94-102). The charged offenses included firearm, violent-offender, forfeiture, and prior-conviction specifications. (*Id.*). He appeared for arraignment on September 24, 2019, was declared indigent, and pled not guilty to all charges. (*Id.* at PageID 104). He was represented by previously-assigned counsel. (*Id.*)

Later, Mr. Lee elected to have the weapons-under-disability charge tried to the bench and the remaining charges tried to a jury. (*Id.* at PageID 115-16). The jury acquitted Mr. Lee of one count of murder and of voluntary manslaughter but convicted him of the remaining charges. (*Id.* at PageID 108). The court then found Mr. Lee guilty of the weapons-under-disability charge. (*Id.*). The court sentenced Mr. Lee to an aggregate sentence of imprisonment for 24 years to life. (*See id.* at PageID 119).

## III.     Direct appeal

On December 21, 2010, through new counsel, Mr. Lee appealed to the Eighth District. (ECF #5-1 at PageID 121). He raised one assignment of error:

> The Defendant-Appellant, Andre Lee, was denied his right to due process of law and equal protection under the law as guaranteed by the United States and Ohio constitutions, when the prosecuting attorney was permitted by the trial court to exercise a pattern of peremptory challenges directed against African-American prospective jury members, all in violation of the teachings of *Batson v. Kentucky*, 106 S.Ct. 1712 (1986).

(*Id.* at PageID 136). The Eighth District overruled the assignment of error and affirmed Mr. Lee's convictions. (*Id.* at PageID 232; *see also Lee*, 2020 WL 7396520, at *6).

On February 1, 2021, Mr. Lee, through counsel, timely appealed to the Supreme Court of Ohio. (ECF #5-1 at PageID 235-37). In his memorandum in support of jurisdiction, Mr. Lee advanced one proposition of law:

> **PROPOSITION OF LAW I:**
> Appellant's constitutionally guaranteed rights were violated by the exclusion of Black jurors and that error was compounded by the failure to hold a hearing pursuant to *Batson* as to one of the jurors in question.

(*Id.* at PageID 243). On April 12, 2021, the Supreme Court of Ohio declined jurisdiction. (*Id.* at PageID 262; *see also State v. Lee*, 166 N.E.3d 15 (Ohio 2021) (table)). Mr. Lee did not further appeal his convictions.

### IV. Application to reopen the direct appeal

On March 17, 2021, Mr. Lee, through new counsel, timely applied to reopen his direct appeal under Ohio Appellate Rule 26(B). (ECF #5-1 at PageID 265-74). Mr. Lee argued he was denied effective assistance of appellate counsel when his appellate counsel raised only one assignment of error and failed to raise nine additional errors, as follows:

> **PROPOSED ASSIGNMENT OF ERROR 1:**
> The failure to inquire into the conflict in the attorney-client relationship before denying Mr. Lee's motion to discharge counsel is structural error.

> **PROPOSED ASSIGNMENT OF ERROR 2:**
> Trial counsel was ineffective for failing to move to sever irrelevant and prejudicial counts.

4

**PROPOSED ASSIGNMENT OF ERROR 3:**
[Mr. Lee] was denied effective assistance of counsel where trial counsel failed to move for the exclusion of irrelevant and prejudicial evidence.

**PROPOSED ASSIGNMENT OF ERROR 4:**
The admission of opinion testimony over objection, denial of motion for mistrial, and failure to provide a narrowly tailored limiting instruction resulted in a denial of [Mr. Lee]'s right to due process.

**PROPOSED ASSIGNMENT OF ERROR 5:**
The trial court erred in admitting gruesome, irrelevant photographs over defense objection.

**PROPOSED ASSIGNMENT OF ERROR 6:**
The inclusion of the flight instruction over the objection of defense counsel was reversible, prejudicial error.

**PROPOSED ASSIGNMENT OF ERROR 7:**
Incomplete and inaccurate self-defense jury instruction, given over defense objection, constituted structural error and a denial of [Mr. Lee]'s due process rights.

**PROPOSED ASSIGNMENT OF ERROR 8:**
[Mr. Lee]'s conviction was against the manifest weight of the evidence.

**PROPOSED ASSIGNMENT OF ERROR 9:**
The State failed to present sufficient evidence to prove each and every element of the offense beyond a reasonable doubt.

(*Id.* at PageID 267-73). The State opposed the reopening of Mr. Lee's direct appeal, arguing the proposed assignments of error were meritless and appellate counsel was not ineffective for failing to meritless issues. (*Id.* at PageID 287-92). On August 20, 2021, the Eighth District declined to reopen Mr. Lee's direct appeal. (*Id.* at PageID 295-309; *see also State v. Lee*, No. 109215, 2021 WL 3780590 (Ohio Ct. App. Aug. 20, 2021), *appeal not allowed*, 177 N.E.3d 998 (Ohio 2021) (table)).

On October 4, 2021, Mr. Lee, through counsel, timely appealed the Eighth District's denial of the application to reopen to the Supreme Court of Ohio (ECF #5-1 at PageID 311-13). In his memorandum in support of jurisdiction, Mr. Lee advanced five propositions of law:

**PROPOSITION OF LAW NO. I:**
Where an accused seeks to discharge his counsel, the trial court errs in denying the accused the opportunity to explain the attorney-client conflict as he perceives it.

**PROPOSITION OF LAW NO. II:**
Failure to object to the prejudicial joinder of unrelated counts constitutes ineffective assistance of counsel, which deprives a defendant of the constitutionally guaranteed right to the effective assistance of counsel granted by the Sixth Amendment to the United States Constitution.

**PROPOSITION OF LAW NO. III:**
The failure to challenge irrelevant, inconclusive, and prejudicial evidence renders counsel's representation so deficient as to deprive an accused of his constitutionally guaranteed right to counsel granted by the Sixth Amendment to the United States Constitution.

**PROPOSITION OF LAW NO. IV:**
Failure to remain on scene, without more, does not constitute consciousness of guilt sufficient to warrant the inclusion of the "flight instruction" within the jury instructions.

**PROPOSITION OF LAW NO. V:**
A conviction unsupported by sufficient evidence results in a violation of an accused's right to due process guaranteed by the Fourteenth Amendment to the United States Constitution.

(*Id.* at PageID 321-31) (cleaned up). The State waived its response. (*Id.* at PageID 333). On

December 14, 2021, the Supreme Court of Ohio declined jurisdiction. (*Id.* at PageID 335; *see also*

*State v. Lee*, 177 N.E.3d 998 (Ohio 2021) (table)).

### FEDERAL HABEAS PETITION

On June 30, 2022, Mr. Lee, through counsel, filed his habeas petition. (ECF #1). He raises

four grounds for relief in his habeas petition:

**GROUND ONE:**
Denial of due process and the effective representation of [trial] counsel.

**GROUND TWO:**
Trial counsel's failure to object to prejudicial joinder resulted in the denial of the effective assistance of counsel as guaranteed by the Sixth Amendment.

**GROUND THREE**:
Trial counsel's failure to object to irrelevant, inconclusive, and prejudicial evidence is ineffective and a violation of the Sixth Amendment.

**GROUND FOUR**:
Legally and factually unsupported jury instructions undermine confidence in a jury verdict resulting in a violation of due process.

(*Id.* at PageID 6, 8, 9, 11; *see also* ECF #1-1 at PageID 23-28). In his memorandum in support of his habeas petition, Mr. Lee raises two more grounds for relief:

**GROUND FIVE**:
The conviction was based on legally insufficient evidence which resulted in a violation of Petitioner's right to due process.

**GROUND SIX**:
Petitioner was denied the effective assistance of [appellate] counsel.

(ECF #1-1 at PageID 28-31).

## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs Mr. Lee's petition for writ of habeas corpus. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). AEDPA recognizes that "[s]tate courts are adequate forums for the vindication of federal rights" and therefore acts as a "formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 571 U.S. 12, 19 (2013). It "dictates a highly deferential standard for evaluating state-court rulings which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (citation and quotation omitted). Accordingly, an application for habeas corpus cannot be granted for a person in custody pursuant to a state conviction unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable

determination of the facts in light of the evidence presented in the State court proceedings."
28 U.S.C. § 2254(d).

Habeas courts review the last explained state-court judgment on the federal claim at issue.
*Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991). For the purposes of § 2254(d)(1), clearly established federal law "is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). It includes "the holdings, as opposed to dicta, of [Supreme Court] decisions." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

A state-court decision is contrary to Supreme Court precedent if the state court arrives at a conclusion opposite that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has decided on a set of materially indistinguishable facts. *Id.* at 405; *White v. Mitchell*, 431 F.3d 517, 523 (6th Cir. 2005). The word "contrary" means "diametrically different, opposite in character or nature, or mutually opposed." *Williams*, 529 U.S. at 405. A state court does not act contrary to clearly established law when the precedent of the Supreme Court is ambiguous or nonexistent. *See Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) (per curiam).

A state-court decision involves an unreasonable application of the Supreme Court's precedent if the state court identifies the correct governing legal rule from the Supreme Court's cases but unreasonably applies it to the facts of the state prisoner's case, or if the state court either unreasonably extends a legal principle from the Supreme Court's precedent to a new context where it should not be applied or unreasonably refuses to extend that principle in a new context where it should apply. *Williams*, 529 U.S. at 407. The appropriate measure of whether a state-court

decision unreasonably applied clearly established federal law is whether that state adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Id.* at 409-11; *see also Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Under § 2254(d)(2), state court factual determinations stand unless they are objectively unreasonable in light of the evidence presented in state court. *Harrington*, 562 U.S. at 100. The Supreme Court has repeatedly emphasized "a state court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion." *Burt*, 571 U.S. at 18. Under AEDPA, "a determination of a factual issue made by a state court shall be presumed to be correct. [Petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2554(e)(1).

Comity principles also require federal courts to defer to a state's judgment on issues of state substantive and procedural law. *Murray v. Carrier*, 477 U.S. 478, 491 (1986); *Engle v. Isaac*, 456 U.S. 107, 128-29 (1982). Federal courts must accept a state court's interpretation of its statutes and rules of practice. *Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986).

The standard is intended to be difficult to meet and reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Harrington*, 562 U.S. at 102-03; *see also Brown v. Davenport*, 596 U.S. 118, 133 (2022) (describing habeas as an "extraordinary remedy, reserved for only extreme malfunctions in the state criminal justice system and different in kind from providing relief on direct appeal") (cleaned up). To obtain "habeas corpus from a federal court, a state

prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

## PROCEDURAL BARRIERS TO FEDERAL HABEAS REVIEW

Before a federal court may review a petitioner's habeas claims on the merits, the petitioner must overcome several procedural barriers. These barriers, including exhaustion of state remedies and procedural default, limit a petitioner's access to review on the merits of a constitutional claim. *Daniels v. United States*, 532 U.S. 374, 381 (2001). Put simply, federal courts may review federal claims that were evaluated on the merits by a state court. Claims there were not evaluated on the merits, either because they were never presented to the state courts (*i.e.*, they are unexhausted) or because they were not properly presented to the state courts (*i.e.*, they are procedurally defaulted), are generally not cognizable on federal habeas review. *See Bonnell v. Mitchel*, 301 F.Supp.2d 698, 722 (N.D. Ohio Feb. 4, 2004).

**Exhaustion of Available State Court Remedies**. A court may not grant a petition for habeas corpus unless it appears the petitioner has exhausted available state court remedies, state corrective process is unavailable, or circumstances exist rendering such state process ineffective to protect the petitioner's rights. 28 U.S.C. § 2254(b)(1). Typically, the exhaustion requirement is satisfied when the petitioner fairly presents all claims to the highest court in the state in where petitioner was convicted, giving the state a full and fair opportunity to rule on the petitioner's claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). A claim is fairly presented when both the factual and legal basis for the claim has been introduced to the state courts. *Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2000). A failure to exhaust applies only where state remedies remain

"available at the time of the federal petition." *Williams v. Anderson*, 460 F.3d 789, 806

(6th Cir. 2006). In contrast, where state court remedies are no longer available, procedural default

(discussed more fully below), rather than exhaustion, applies. *Id.*

    **Procedural Default**. Absent a petitioner showing either cause and prejudice or that failure

to review the claim would result in a fundamental miscarriage of justice (discussed below), a federal

court will not consider the merits of procedurally defaulted claims. *Lundgren v. Mitchell*, 440 F.3d

754, 763 (6th Cir. 2006) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)).

    There are two avenues by which a petitioner's claim may be procedurally defaulted.

*Williams*, 460 F.3d at 806. First, procedural default occurs if a petitioner "fails to comply with state

procedural rules in presenting his claim to the appropriate state court." *Id.* To determine whether a

petitioner's failure to comply with a state procedural rule bars review of his habeas claims, courts

in the Sixth Circuit perform a four-pronged analysis: (1) whether there is a state procedural rule

applicable to petitioner's claim and whether petitioner failed to comply with that rule; (2) whether

the state court enforced the procedural rule; (3) whether the procedural rule is an adequate and

independent state ground on which the state can foreclose review of the federal constitutional

claim; and (4) whether the petitioner can show cause for his failure to follow the rule and that he

was prejudiced by the alleged constitutional error. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir.

1986).

    Second, a claim may be procedurally defaulted when the petitioner fails to raise it in state

court and pursue it through the state's "ordinary appellate review procedures." *Williams*, 460 F.3d

at 806 (citing *O'Sullivan*, 526 U.S. at 848 (1991)); *see also Baston v. Bagley*, 282 F.Supp.2d 655, 661

(N.D. Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be

considered in a federal habeas corpus petition."). As addressed above, "[i]f, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Williams*, 460 F.3d at 806. Although the exhaustion requirement is satisfied because there are no longer any state remedies available to the petitioner, *see Coleman v. Thompson*, 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims, barring federal court review. *Williams*, 460 F.3d at 806.

To overcome a procedural bar, a petitioner must show cause for the default and actual prejudice from the alleged violation of federal law or show that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 749. Habeas petitioners cannot rely on conclusory assertions of cause and prejudice to overcome procedural default; they must present affirmative evidence or argument on the precise cause and prejudice claimed. *See Tinsley v. Million*, 399 F.3d 796, 806 (6th Cir. 2005) ("It is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at a developed argumentation, are deemed waived.") (quotation and citation omitted). A finding of cause and prejudice does not entitle a petitioner to habeas relief; it only allows a federal court to consider the merits of a claim that otherwise would have been procedurally defaulted. *See Coleman*, 501 U.S. at 750.

A showing of cause for the default requires more than the mere proffer of an excuse. Rather, "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray*, 477 U.S. at 488; *see also Wogenstahl v. Mitchell*, 668 F.3d 307, 321 (6th Cir. 2012). Neither a petitioner's pro se status nor his ignorance of the law

and procedural filing requirements are enough to establish cause to overcome procedural default. *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004).

To demonstrate prejudice sufficient to overcome procedural default, a petitioner must show more than mere errors in the state trial creating a possibility of prejudice; the petitioner must show that the alleged errors worked to the petitioner's actual and substantial disadvantage, infecting the entire trial with error of constitutional dimensions. *Murray*, 477 at 494. There is no prejudice where the petitioner does not show a reasonable probability that the result of the proceeding would have been different. *Ambrose v. Booker*, 801 F.3d 567, 577-78 (6th Cir. 2015).

Alternatively, a petitioner may overcome procedural default by showing that a fundamental miscarriage of justice will occur if the claims are not considered. *Murray*, 477 U.S. at 495. A fundamental miscarriage of justice occurs in the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Id.* at 495-96; *see also Schlup v. Delo*, 513 U.S. 298, 327 (1995). Actual innocence means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). A valid actual innocence claim must be supported by new, reliable evidence—such as exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial and is so strong a court cannot have confidence in the outcome of the petitioner's trial. *Schlup*, 513 U.S. at 324. In other words, a "petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* at 327.

## ANALYSIS

In his grounds for relief, Mr. Lee asserts: (1) he was denied the due process of law when the trial court disallowed him to explain his request to substitute his trial counsel and then denied his

13

request, (2) improper evidence was introduced against him, (3) unreliable scientific testimony was introduced against him, (4) the jury was instructed improperly, (5) insufficient evidence supported his conviction, and (6) he was denied effective assistance of appellate counsel by failing to raise these issues on direct appeal. (*See* ECF #1 at PageID 6, 8, 9, 11; *see also* ECF #1-1 at PageID 23-28). The State argues Mr. Lee has procedurally defaulted the first five grounds because he did not fairly present them to the Eighth District and he procedurally defaulted the sixth ground because he did not fairly present it to the Supreme Court of Ohio. (ECF #5 at PageID 63, 68, 71, 73, 77, 81).

## I.    Mr. Lee Procedurally Defaulted Grounds One through Five, But Not Ground Six.

The State asserts Mr. Lee procedurally defaulted his first five grounds for relief because he did not fairly present those claims in the Eighth District, instead arguing a single jury-selection issue. (ECF #5 at PageID 63, 68, 71, 73, 77). I agree. Because Mr. Lee could have raised grounds one through five on direct appeal but did not do so, he procedurally defaulted them. *See Baston*, 282 F.Supp.2d at 661 ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition.").

Although Mr. Lee raised those grounds as proposed assignments of error in his Rule 26(B) application to reopen, the Sixth Circuit has held that such an application raises an "analytically distinct" claim that appellate counsel was ineffective for failing to raise underlying errors. *See White v. Mitchell*, 431 F.3d 517, 526 (6th Cir. 2005). The application does not itself preserve those underlying errors for federal habeas review. Thus, Mr. Lee cannot rely solely on the application to preserve Grounds One through Five.

Mr. Lee contends Ground Six, a standalone claim of ineffective assistance of appellate counsel, serves as cause to excuse the default of Grounds One through Five.[2] (*See* ECF #7 at PageID 1035-37). The State counters that Ground Six cannot serve as cause because Mr. Lee procedurally defaulted that ground by not presenting it to the Supreme Court of Ohio. (ECF #5 at PageID 80-82). And even if not procedurally defaulted, the State argues Ground Six cannot serve as cause because it is meritless. (*See id.* at PageID 64-68). Mr. Lee responds that Ground Six is meritorious, was raised in his application to reopen his direct appeal, and was raised before the Supreme Court of Ohio. (*See* ECF #7 at PageID 1036).

A.   **Ground Six (ineffective assistance of appellate counsel) is not procedurally defaulted because it was fairly presented to the state courts.**

I must first determine whether Mr. Lee procedurally defaulted Ground Six, which argues his appellate counsel was ineffective for failing to raise Grounds One through Five, because a procedurally defaulted claim cannot serve as cause to excuse other procedurally defaulted claims. *See Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). As discussed above, a claim may be procedurally defaulted when the petitioner does not raise it in state court and pursue it all the way through the state's "ordinary appellate review procedures." *Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 848 (1991)); *see also Baston*, 282 F.Supp.2d at 661. Fair presentation of an issue requires that a petitioner give the state courts a full opportunity to resolve any constitutional

---

[2]   Alternatively, Mr. Lee also asserts any procedural default should be excused, otherwise a fundamental miscarriage of justice will occur. (ECF #7 at PageID 1037). But he advances no new, reliable evidence that he is actually innocent of the crimes he for which he was convicted, which he must do to excuse a procedural default. *See Schlup*, 513 U.S. at 324. Accordingly, the procedural-default analysis here addresses only cause and prejudice.

issues by invoking "one complete round" of the state's appellate review system. *Caver v. Straub*, 349 F.3d 340, 346 (6th Cir. 2003) (quoting *O'Sullivan*, 526 U.S. at 845).

In Ohio, claims for ineffective assistance of appellate counsel may be raised in an application to reopen the direct appeal under Appellate Rule 26 or in a discretionary appeal to the Supreme Court of Ohio. *See Goldberg v. Maloney*, 692 F.3d 534, 538 (6th Cir. 2012) (citing *State v. Davis*, 894 N.E.2d 1221 (Ohio 2008)). Mr. Lee filed a timely application to reopen his direct appeal and argued appellate counsel was ineffective for not raising nine assignments of error. (ECF #5-1 at PageID 267-73). Mr. Lee then appealed the denial of that application to the Supreme Court of Ohio, arguing appellate counsel was ineffective for not raising five of those nine assignments of error. (*Id.* at PageID 321-31). Thus, while Mr. Lee abandoned four of his nine alleged errors by appellate counsel, his claim that appellate counsel rendered ineffective assistance for failing to preserve the remaining five alleged errors (raised here in Grounds One through Five) was fairly presented. *See Caver*, 349 F.3d at 346.

Thus, Ground Six is not procedurally defaulted and can be reviewed on the merits.

**B.     Ground Six does not serve as cause to excuse the procedural default of Grounds One through Five.**

Next, I must determine whether Mr. Lee's claim for ineffective assistance of appellate counsel has sufficient merit such that it serves as cause to excuse the procedural default of his other five claims. Mr. Lee's ineffective-assistance claim may serve as cause to excuse the procedural default of his underlying claims if the failure to raise those underlying claims was ineffective assistance. *See Edwards*, 529 U.S. at 451; *see also Davie v. Mitchell*, 547 F.3d 297, 312-15 (6th Cir. 2008).

Because Mr. Lee's claim that appellate counsel was ineffective for failing to raise his other grounds for relief on direct appeal was addressed on the merits by the Eighth District (ECF #5-1 at PageID 295-309), his ineffective-assistance claim would be subject to AEDPA deference as a freestanding claim for relief. *Smith v. Warden, Toledo Corr. Inst.*, 780 F.App'x 208, 225 (6th Cir. 2019). But the claim is reviewed de novo when it is used to establish cause to excuse a procedural default. *Id.*; *Joseph v. Coyle*, 469 F.3d 441, 459 (6th Cir. 2006).

For a habeas petitioner to establish that counsel's representation was constitutionally deficient, the petitioner must show (1) counsel's representation fell below an objective standard of reasonableness based on all the circumstances in the case, such that the attorney did not function as "counsel" guaranteed by the Sixth Amendment, and (2) counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Moreover, "establishing *Strickland* prejudice likewise establishes prejudice for purposes of cause and prejudice." *Smith*, 704 F.App'x at 225 (quoting *Joseph*, 569 F.3d at 462-63). Thus, if Mr. Lee's appellate counsel was constitutionally ineffective in failing to raise a substantive claim, this would provide both cause and prejudice permitting that claim to be heard on the merits. For this reason, Mr. Lee need not show at this stage that the Eighth District's rejection of his ineffective-assistance-of-appellate-counsel claim for failing to raise the other grounds for relief on appeal was an "unreasonable application" of federal law. *See Smith*, 704 F.App'x at 226-27; *see also* 28 U.S.C. § 2254(d)(1).

To satisfy the deficiency prong, the habeas petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 668. Among the various factors examined in determining whether appellate counsel's performance was

deficient are whether the omitted issues were "significant and obvious," whether there was "arguably contrary authority," whether the omitted issues were "clearly stronger than those presented," whether the omitted issues were preserved, and whether "the trial court's rulings [were] subject to deference on appeal." *See Mapes v. Tate*, 388 F.3d 187, 194 (6th Cir. 2004).

Because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable," a court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. This is an extremely deferential standard, because "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690.

To satisfy the prejudice requirement of *Strickland*, the habeas petitioner must show "a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is one sufficient to undermine confidence in the outcome." *Id.* at 694. Failure to satisfy either requirement dooms an ineffective-assistance-of-counsel claim. *Id.* at 697. And although the habeas petitioner must prove each element of the two-part *Strickland* test to establish an ineffective-assistance-of-counsel claim, courts need not conduct an analysis under both prongs. *Id.* at 697.

I now turn to applying these standards to Grounds One through Five.

### 1. Ground One: the trial court's resolution of Mr. Lee's request to substitute his court-appointed attorney

For Mr. Lee's claim of ineffective assistance of appellate counsel to serve as cause to excuse the procedural default of Ground One, appellate counsel's failure to assign that ground as error

18

must constitute ineffective assistance. *See Edwards,* 529 U.S. at 451; *Davie,* 547 F.3d at 312-15. To show ineffective assistance (and excuse the default), Mr. Lee must show his counsel's failure to raise Ground One on direct appeal was "objectively unreasonable" and that there was "a reasonable probability that . . . he would have prevailed on his appeal" had the issue been raised. *See Mapes,* 388 F.3d at 194. To determine whether there was a reasonable probability of success on appeal, I must examine (though not necessarily decide) the merits of the underlying claim prior to potentially excusing the procedural default. *See id.*; *see also Davie,* 547 F.3d at 312-15 (examining merits of procedurally defaulted claim for improper jury instructions to determine whether counsel was ineffective for failing to raise that claim on direct appeal and thus excusing the default).

In Ground One, Mr. Lee argues he was denied effective assistance of trial counsel because there was a breakdown in the relationship between him and his court-appointed attorney prior to trial. (ECF #7 at PageID 1037). Mr. Lee further argues the trial court denied him the due process of law by denying him the opportunity to be heard on his request for a new attorney. (*Id.*).

There was not a reasonable probability of success had Mr. Lee's appellate counsel raised Ground One on direct appeal. First, the Supreme Court has held whether to substitute counsel is a "particularly context-specific inquiry" that is deferential to the trial court, an initial hurdle to a successful appeal. *See Martel v. Clair,* 565 U.S. 648, 663-64 (2012) ("Because a trial court's decision on substitution is so fact-specific, it deserves deference; a reviewing court may overturn it only for an abuse of discretion."). Second, the Supreme Court has articulated three relevant considerations in deciding whether to substitute trial counsel, including (1) the timeliness of the motion, (2) the adequacy of the district court's inquiry into the complaint, and (3) the asserted cause for that

complaint, including the extent of the conflict or breakdown in communication between lawyer and client (and the client's own responsibility, if any, for that conflict). *See id.* at 663. All three support the trial court's denial of Mr. Lee's request.

First, the trial transcript reveals Mr. Lee made his request just before the jury was sworn in to begin his trial. (*See* ECF #5-2 at PageID 359-62). Second, the trial court heard Mr. Lee's complaints on the record:

> MR. LEE: And for the record, I would like to terminate my counsel, because I feel like I'm not being represented right. I don't feel comfortable with my life in his hands, because I asked him several times to allow me to see my motion to discovery, because I have a right to aid my defense. He have not given me nothing to help him with my case. We haven't talked about no strategies. He haven't prepared me for trial or anything, your Honor. So I don't feel comfortable moving forward with him. I told him several times about this indictment, about the drug possession. I got indicted 35 days later after I been incarcerated. I asked him to get that dismissed. He kept saying that he could not—that it wasn't—it was valid. I told him that I—
>
> THE COURT: He cannot dismiss the charges. Only the State of Ohio—
>
> MR. LEE: No, I asked him to put the motion in, your Honor.
>
> THE COURT: Pardon me?
>
> MR. LEE: I asked him to put the motion in. He never put the motion in.

(ECF #5-2 at PageID 359-60). The court then questioned Mr. Lee's trial counsel who proffered that he had shared all discovery materials with Mr. Lee and that he and his investigator had met with Mr. Lee, discussed potential defense strategies with him, and investigated potential witnesses he had identified. (*Id.* at PageID 361-62). The transcript does not mention any pretrial motion practice. Even still, the transcript reveals the trial court investigated the Mr. Lee's request.

Third, the cause Mr. Lee asserted was vague and responded to by his trial attorney. He argues he had "additional concerns" about his trial counsel and had he been able to thoroughly

explain his reasoning, the trial court would have acceded to his request to substitute his counsel. (*See* ECF #7 at PageID 1040). But he never raised those concerns in his application to reopen or his appeal to the Supreme Court of Ohio. (*See* ECF #5-1 at PageID 267-68, 321-323; ECF #1-2 at PageID 23-24; ECF #7 at PageID 1039-40). And he does not identify those concerns now. Speculative arguments about how an attorney should have acted were the situation different are the kind of second-guessing that *Strickland* disfavors and thus are insufficient to establish his appellate counsel's performance was deficient. *See Strickland*, 466 U.S. at 689.

Thus, after considering the inherent deference to the trial court and the three applicable factors, there is no reasonable likelihood that Mr. Lee would have prevailed had he appealed the trial court's denial of his substitution request. The right to effective assistance of counsel does not compel appointed counsel to press every nonfrivolous argument requested by the client. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). Rather, effective appellate advocacy requires the winnowing out of weaker arguments on appeal and focusing on the most promising arguments. *See id.* at 752-53. Thus, any failure of Mr. Lee's appellate attorney to assign the issue as error on appeal was not deficient.

Because Mr. Lee's appellate counsel was not deficient in this respect, his standalone claim for ineffective assistance of appellate counsel cannot serve as cause to excuse his procedural default of this ground for relief. *See Davie*, 547 F.3d at 313-15 (holding alleged ineffective assistance cannot serve as cause to excuse procedural default of the petitioner's underlying claim the jury was improperly instructed where the underlying claim was meritless and thus the habeas petitioner's attorney was not ineffective for failing to raise that issue on direct appeal). Mr. Lee does not

advance other cause for his default, and he waived his argument that a manifest miscarriage of justice would occur if the default were not overlooked.

Thus, I recommend the District Court **DISMISS** Ground One as procedurally defaulted.

### 2.    Ground Two: the joinder of murder and drug-possession charges

In Ground Two, Mr. Lee contends he was prejudiced by the joinder of the murder and drug-possession charges against him and that his trial counsel was ineffective for not moving to sever those charges. (ECF #7 at PageID 1041). To prove drug possession, the State introduced evidence that the police officers found a small baggie of white powder in Mr. Lee's possession when he was arrested (*see* ECF #5-3 at PageID 595-98) and the white substance was found to contain fentanyl (*see id.* at PageID 657-59). Mr. Lee argues the evidence undermined his credibility and by extension undermined his self-defense strategy to the felonious-assault and murder charges. (ECF #7 at PageID 1044).

There was not a reasonable probability of success had Mr. Lee's appellate counsel raised Ground Two on direct appeal. Assuming without deciding that the evidence Mr. Lee complains of would be inadmissible under Ohio Evidence Rule 404(B) had the drug-possession charge been severed, that inadmissibility alone does not establish an improper joinder. Ohio courts hold that joinder can still be proper despite introduction of evidence that would be inadmissible in separate trials so long as the evidence of each crime joined at trial is simple and direct. *See State v. Lott*, 555 N.E.2d 293, 298 (Ohio 1990). Here, the evidence of drug possession is simple and direct: Mr. Lee was arrested in possession of a baggie containing fentanyl. Any potential prejudice towards Mr. Lee was reduced by the trial judge instructing the jury that they "must consider each count and the evidence applicable to each count separately" (ECF #5-4 at PageID 956) and jurors are presumed to follow a trial court's instructions. *Stanford v. Parker*, 266 F.3d 442, 459 (6th Cir. 2001). Thus,

22

even if Mr. Lee's appellate counsel raised the claim, there is not a reasonable probability that the claim would have succeeded.

Because his counsel was not ineffective, Mr. Lee's standalone claim for ineffective assistance of appellate counsel cannot serve as cause to excuse his procedural default of Ground Two. *See Davie*, 547 F.3d at 313-15. Mr. Lee does not advance other cause for his default, and he waived his argument that a manifest miscarriage of justice would occur if the default were not overlooked.

Thus, I recommend the District Court **DISMISS** Ground Two as procedurally defaulted.

### 3. Ground Three: *Daubert* challenge to the state forensic scientist's testimony

In Ground Three, Mr. Lee contends his trial counsel was ineffective by not objecting to unreliable and conflicting testimony from the State's forensic scientist. (ECF #7 at PageID 1045). Mr. Lee explains the forensic scientist testified about two forensic tests (trace-metal-detection test and Griess test), admitting that both yielded inconclusive results; thus, the forensic scientist could not provide a meaningful opinion. (*Id.* at PageID 1046-47). Mr. Lee argues his trial counsel should have sought to exclude the testimony under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). (*See id.*).

There was not a reasonable probability of success had Mr. Lee's appellate counsel raised Ground Three on direct appeal because the scientific testimony did not inculpate Mr. Lee. An attorney's error amounts to ineffective assistance only if it prejudices the client. *Strickland*, 466 U.S. at 694. A review of the forensic scientist's testimony revealed the scientist testified he could not reach any useful conclusions from both tests.

23

First, the scientist testified the trace-metal detection test only confirms the presence of metal if it yields a positive result, the test often yields negative results, and the test conducted on the murder victim yielded a negative result. (ECF #5-3 at PageID 678-79). Second, the scientist testified the Griess test confirms the presence of nitrites (a component of gunpowder) by creating a visible chemical reaction on Griess paper (paper treated with Griess reagent). (*See* ECF #5-3 at PageID 691-92). The scientist recounted the test conducted on the murder victim's clothes did not cause a chemical reaction. (*Id.*). The forensic scientist noted this result conflicted with a microscopic grain of gunpower found in the victim's clothes and thus he was unable to reach a conclusion about whether nitrites were present on the victim's clothes. (*Id.* at PageID 694-95).

Even presuming this testimony was impermissible under *Daubert*, the testimony about these two tests did not inculpate Mr. Lee: both tests provided no insight into the murder. Mr. Lee contends the testimony resulted in "unfounded" and "improper" conclusions, but he does not explain what those conclusions might be. (*See* ECF #7 at PageID 1045, 1048). Whatever potentially unfounded or improper conclusions the jury may have drawn, if any, were limited by defense counsel's cross-examination that highlighted the inconclusive results of both tests such that no conclusions could be drawn from them. (ECF #5-3 at PageID 704-09).

Because Mr. Lee does not show he was prejudiced by the forensic scientist's testimony,[3] he cannot establish his trial counsel was ineffective for failing to object to the testimony or that his appellate counsel ineffective for failing to raise the issue on appeal. *See Mapes*, 171 F.3d at 413

---

[3]     For the same reasons, Mr. Lee also could not establish he was prejudiced by his appellate counsel's failure to preserve Ground Three for habeas review. *See Coleman*, 501 U.S. at 749 (holding a petitioner must show cause for the default and actual prejudice from the alleged violation of federal law to overcome a procedural default).

("[T]here can be no constitutional deficiency in appellate counsel's failure to raise meritless issues."). Because his counsel was not ineffective, Ground Six cannot serve as cause to excuse his procedural default of Ground Three. *See Davie*, 547 F.3d at 313-15. Mr. Lee does not advance other cause for his default and he waived his argument that a manifest miscarriage of justice would occur if the default were not overlooked.

Thus, I recommend the District Court **DISMISS** Ground Three as procedurally defaulted.

### 4.    Ground Four: instructing the jury on Mr. Lee's flight

In Ground Four, Mr. Lee contends the trial court erred by instructing the jury that they could use evidence of the accused's flight from the murder scene as an indication of consciousness of guilt where there was no evidence he fled. (ECF #1-2 at PageID 27-28; ECF #7 at PageID 1048).

There was no reasonable probability of success had Mr. Lee's appellate counsel raised Ground Four on direct appeal. First, Mr. Lee would face a deferential standard of review. Under Ohio law, whether to give a jury instruction on flight "is typically within the sound discretion of the trial court," and Ohio appellate courts review such a decision under a deferential abuse-of-discretion standard. *See State v. Dunn*, No. 101648, 2015 WL 4656534, at *8 (Ohio Ct. App. Aug. 6, 2015), *appeal not allowed*, 41 N.E.3d 448 (Ohio 2015) (table). This deferential standard of review lowers the potential likelihood of success on appeal. *See Mapes*, 388 F.3d at 191 (one factor in determining whether appellate counsel was ineffective is whether "the trial court's rulings [were] subject to deference on appeal.").

Next, to secure a reversal on appeal, Mr. Lee would have to make a high showing that a manifest miscarriage of justice occurred. An Ohio appellate court "may not reverse a conviction in a criminal case due to jury instructions unless it is clear that the jury instructions constituted

prejudicial error." *Dunn*, 2015 WL 4656534, at *9 (quoting *State v. McKibbon*, No. C-010145, 2002 WL 727009, at *4 (Ohio Ct. App. Apr. 26, 2002)). An Ohio appellate court will find a jury instruction constitutes prejudicial error where the jury instructions as a whole results in a manifest miscarriage of justice. *Id.* (quoting *State v. Hancock*, No. CA2007-03-042, 2008 WL 4616589, at *2 (Ohio Ct. App. Oct. 20, 2008)). These two hurdles work together to set a high bar for Mr. Lee to have his conviction reversed had he raised the issue on appeal.

There was not a reasonable probability that Mr. Lee could meet that high bar. The trial court provided the following flight instruction:

> Testimony has been admitted indicating that the defendant fled the scene. You are instructed that the fact that the defendant fled scene does not raise a presumption of guilt, but it may tend to indicate the defendant's consciousness of guilt.

> If you find the facts do not support that the defendant fled the scene, or if you find that some other motive prompted the defendant's conduct, or if you're unable to decide what the defendant's motivation was, then you should not consider this evidence for any purpose.

> However, if you find that the facts support that the defendant engaged in such conduct and if you decide that the defendant was motivated by a consciousness of guilt, you may, but are not required to, consider that evidence in deciding whether the defendant is guilty of the crimes charged.

> You alone will determine what weight, if any, to give to the evidence.

(ECF #5-4 at PageID 977-78).

The language of the instruction does not tell the jury that a person who flees the scene is guilty. Rather, it instructs the jury that *if* they conclude Mr. Lee fled the scene of the shooting *and* lacked an innocent motive for doing so, then the jury *could* (but was not required to) consider that circumstance among all the others in deciding Mr. Lee's ultimate guilt.

Multiple Ohio appellate courts (including the Eighth District, which would have heard this challenge) have upheld verbatim or near-verbatim flight instructions as not prejudicial. *See State v.*

*Terry*, 220 N.E.3d 938, 950 (Ohio Ct. App. June 30, 2023), *appeal allowed on other grounds,* 219 N.E.3d 974 (Ohio 2023); *State v. Davis*, No. 109890, 2021 WL 2838407, at *5-6 (Ohio Ct. App. July 8, 2021); *State v. Guffie*, No. 112642, 2024 WL 2859451, at *24-25 (Ohio Ct. App. June 6, 2024). Given the apparent consensus among Ohio appellate courts on the lack of prejudice from this instruction, there is not a reasonable probability that had Mr. Lee raised the issue, he would manage to convince an Ohio appellate court otherwise. *See Mapes*, 388 F.3d at 191 (one factor in determining whether appellate counsel is ineffective is the presence of "arguably contrary authority.").

Because there is no reasonable probability Mr. Lee could meet the high standard on appeal to demonstrate the jury instructions as a whole prejudiced him so much that a manifest miscarriage of justice occurred, his appellate counsel was not ineffective for failing to assign the issue on appeal. *See Mapes*, 171 F.3d at 413. Because his appellate counsel was not ineffective by not raising the jury instructions on appeal, Mr. Lee's standalone claim for ineffective assistance of appellate counsel cannot serve as cause to excuse his procedural default of this issue. *See Davie*, 547 F.3d at 313-15. Mr. Lee does not advance other cause for his default and he waived his argument that a manifest miscarriage of justice would occur if the default were not overlooked.

Thus, I recommend the District Court **DISMISS** Ground Four as procedurally defaulted.

5.    **Ground Five: sufficiency of the evidence supporting Mr. Lee's convictions for murder and felonious assault**

In Ground Five, Mr. Lee contends insufficient evidence supported his convictions. (ECF #1-2 at PageID 28-29; ECF #7 at PageID 1048). The Fourteenth Amendment's due process protections provide that "no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof." *Jackson v. Virginia*, 443 U.S. 307, 316 (1979). For a sufficiency-of-the-

evidence appeal, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *See State v. Jenks*, 574 N.E.2d 492, 494 (Ohio 1991) (citing *Jackson*, 443 U.S. 307).

Mr. Lee advances multiple arguments why the State did not provide sufficient proof. First, he recasts his arguments in Grounds Two and Three about joinder and scientific testimony as resulting in the State not proving all the essential elements of the charged offenses. (ECF #1-2 at PageID 29; ECF #7 at PageID 1051-52). Then he asserts his "conviction was unsupported by sufficient evidence and was permeated with multiple other statutory, evidentiary, and constitutional violations" but does not explain what those violations are. (ECF #1-2 at PageID 29). And finally, he contends in his Traverse that there was no evidence that he knowingly caused serious physical harm to the victim. (ECF #7 at PageID 1053).

None of these arguments have a reasonable probability of success on appeal. His argument recasting Ground Two, if accepted, could show there was insufficient evidence of drug possession. But there is not a greater likelihood those arguments would succeed on sufficiency review when, as discussed above, they are unlikely to succeed on their own. Mr. Lee's argument recasting Ground Three is inapplicable for the same reason discussed above: the testimony of the State's forensic scientist did not inculpate him. Third, his argument that there were other, unexplained "statutory, evidentiary and constitutional violations" is undeveloped and speculative, and thus has been waived. *See Tinsley*, 399 F.3d at 806 ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at a developed argumentation, are deemed waived.").

His fourth argument fails because a review of the record reveals evidence that, when viewed in the light most favorable to the prosecution, meets the "knowingly" element of felonious assault and by extension the requirement for felony murder. Mr. Lee's conviction for felonious assault requires the State prove Mr. Lee "knowingly caused serious physical harm to another." *See* Ohio Rev. Code § 2903.11(A)(1). His conviction for murder requires the State prove he "caused the death of another as a proximate result of the offender committing an offense of violence . . . that is a first-degree or second-degree felony." Ohio Rev. Code § 2903.02(B). Here the first-degree felony is felonious assault. (*See* ECF #5-1 at PageID 95).

Mr. Lee proceeded at trial with a theory of self-defense. (*See* ECF #5-4 at PageID 895-96, 973-77). In Ohio, self-defense requires the defendant admit he intended to use force to repel force, but it does not require he admit he intended to harm or kill. *See State v. Wilson*, 237 N.E.3d 179, 186 (Ohio 2024). Ohio courts have further held that intentionally shooting toward, or in the vicinity of, another person when there is a risk of injury nevertheless meets the "knowingly" element of felonious assault. *Id.* at 187 (collecting cases).

The state-court record details the State introduced surveillance footage of the incident showing the victim and another man arguing and then, after several minutes of argument, the two men leave the frame followed by the sound of two gunshots. (ECF #5-4 at PageID 824-25). The State also presented evidence that the victim was shot through the lung. (ECF #5-5 at PageID 791, 793). Viewing these two pieces of evidence in the light most favorable to the State, a rational factfinder could infer that the gun was fired toward the victim, satisfying the "knowing" element. This inference, taken together with the admission that Mr. Lee intentionally used force on the victim to escape force, supports finding that Mr. Lee intentionally fired a gun toward, or in the

29

vicinity of, the victim and struck him, supporting the conclusion that Mr. Lee knowingly caused serious physical harm.[4]

Thus, there is no reasonable probability that Mr. Lee's arguments would demonstrate no rational trier of fact could have found the essential elements of his convictions proven beyond a reasonable doubt after viewing the evidence in a light most favorable to the prosecution. *See Jenks*, 574 N.E.2d at 494 (citing *Jackson*, 443 U.S. 307). Accordingly, Mr. Lee's appellate counsel was not ineffective for not raising Ground Five on appeal. *See Mapes*, 171 F.3d at 413. Because his appellate counsel was not ineffective, Mr. Lee's standalone claim for ineffective assistance of appellate counsel cannot serve as cause to excuse his procedural default of Ground Five. *See Davie*, 547 F.3d at 313-15. Mr. Lee does not advance other cause for his default and he waived his argument that a manifest miscarriage of justice would occur if the default were not overlooked.

Thus, I recommend the District Court **DISMISS** Ground Five as procedurally defaulted.

## II.  Merits of Ground Six

Now I turn to the merits of Ground Six, Mr. Lee's sole non-procedurally defaulted ground. In it, Mr. Lee argues his appellate counsel was ineffective for raising only one assignment of error on direct appeal, which related to jury selection. (ECF #1-2 at PageID 30-31; ECF #7 at PageID 1054-56). As noted above, the Eighth District addressed the merits of Mr. Lee's claim that his appellate counsel was ineffective (ECF #5-1 at PageID 295-309), so it is subject to AEDPA

---

[4]  The State also played the video recording of Mr. Lee's three-hour interrogation by the police. (*See* ECF #5-4 at PageID 868-72). During closing argument, the State characterized the video as including a statement by Mr. Lee that he shot the victim. (*Id.* at PageID 909). While this would also indicate Mr. Lee's sufficiency-of-the-evidence argument is unlikely to prevail on appeal, the video is not in the state-court record, its contents were not transcribed, and the State's characterization in closing argument is not itself evidence. Therefore, I conclude it is not appropriate to rely on the video in analyzing the merits of Ground Five.

deference. *Smith*, 780 F.App'x at 225. AEDPA "dictates a highly deferential standard for evaluating state-court rulings which demands that state-court decisions be given the benefit of the doubt." *Bell*, 543 U.S. at 455 (citation and quotation omitted). Accordingly, Mr. Lee must demonstrate the Eighth District's adjudication of his ineffective-assistance claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." *See* 28 U.S.C. § 2254(d). The familiar two-part test in *Strickland v. Washington*, 486 U.S. 668 (1984), described above is the federal law applicable to Mr. Lee's claim.

The Eighth District determined Mr. Lee's appellate counsel was not constitutionally deficient and there was no reasonable probability of a different outcome on appeal for Mr. Lee's nine proposed assignments of error. (ECF #5-1 at PageID 297-309). In addressing the errors Mr. Lee now raises in his habeas petition, the Eighth District found:

1. Mr. Lee did not demonstrate an irreconcilable conflict or breakdown of communication with his counsel nor that the trial court's denial of his request to substitute his counsel created a structural error in the trial. (*Id.* at PageID 298).

2. Joinder of the charges against Mr. Lee proper. (*Id.* at PageID 299).

3. The expert testimony from the State's forensic scientist favored Mr. Lee and thus its admission at trial did not prejudice him. (*Id.* at PageID 300).

4. Sufficient evidence warranted the trial court instructing the jury on Mr. Lee's flight from the scene. (*Id.* at PageID 304-05).

5. Mr. Lee did not make a cognizable argument challenging the sufficiency of the evidence, but even if he had, there was sufficient evidence supporting each of his convictions. (*Id.* at PageID 307-08).

None of the Eighth District's determinations were contrary to, or an unreasonable application of, the *Strickland* standard. A federal habeas court is bound by the state court's interpretation of the laws of that state, including one announced on direct appeal. *Bradshaw v. Richey*, 546 U.S.74, 76 (2005). Thus, this Court is bound to the Eighth District's interpretations of Ohio's rules for joinder and giving jury instructions. The Eighth District did not unreasonably apply the *Strickland* standard to then conclude there was no reasonable probability of a different outcome on appeal had Mr. Lee's appellate counsel raised Ground Two or Four on appeal because there was no error in Ohio law.

The Eighth District also did not unreasonably determine the facts of Mr. Lee's case or unreasonably apply the *Strickland* standard to those facts. As discussed above, the state-court record shows Mr. Lee's request to substitute his counsel came at the last minute and contains the trial court's questioning of Mr. Lee's counsel about his complaints. (*See* ECF #5-2 at PageID 359-62). Next, the state-court record reveals the testimony from the State's forensic scientist that he could not draw conclusions from either forensic test. (*See* ECF #5-3 at PageID 691-95). Finally, the state-court record includes evidence that Mr. Lee fired a gun when it was near, or pointed at, the victim (*see* ECF #5-4 at PageID 824-25; ECF #5-5 at PageID 791, 793), and Mr. Lee's self-defense strategy required that he admit having intentionally used force. *Wilson*, 237 N.E.3d at 186. The Eighth District did not then unreasonably apply the *Strickland* standard by concluding from these facts that Mr. Lee could not demonstrate he was prejudiced by his appellate counsel's failure to raise Grounds One, Three, and Five on appeal.

Therefore, I recommend the District Court **DENY** Ground Six as meritless.

CERTIFICATE OF APPEALABILITY

A habeas petitioner may not appeal the denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability (COA) and specifies the issues that can be raised on appeal. 28 U.S.C. § 2253(c). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court has determined a petitioner's constitutional claim to lack merit, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong" before receiving a COA. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When the district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether (1) the petition states a valid claim of the denial of a constitutional right and (2) the district court was correct in its procedural ruling. *Id.* A showing that the appeal would succeed on the claim is not required to grant a COA. *Miller-El*, 537 U.S. at 337.

Mr. Lee has made not substantial showing of the denial of any constitutional right. Jurists of reason would not find it debatable whether the grounds for relief are procedurally defaulted or valid claims of the denial of constitutional rights. Therefore, I recommend the District Court **DENY** Mr. Lee a COA with respect to any ground for relief.

CONCLUSION AND RECOMMENDATION

For these reasons, I recommend the District Court **DISMISS** Grounds One through Five as procedurally defaulted, **DENY** Ground Six as meritless, and **DISMISS** Mr. Lee's habeas

petition. I further recommend the District Court **DENY** a certificate of appealability as to all grounds.

Dated: December 6, 2024

_____
DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

## Objections, Review, and Appeal

**Within 14 days** after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the Magistrate Judge. *See* Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); Local Civ. R. 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal, either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the Report and Recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the Report and Recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the Magistrate Judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*, 932 F.2d at 509). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).